Mr. Justice Richardson
delivered the following opinion :
I concur in the decision that a new trial ought to be granted. But upon the non-suit, I consider the presiding judge correct in refusing *251 tbe motion. The question is, can the value of the use (wages) of the negroes be recovered against the representative of Churr, in an action of assumpsit, or was the use of the negroes such a mere trespass as died with him ? The proper and legal meaning of tort or trespass, is the violation of another’s right, without pecuniary benefit to the offender. If,' after the violence or trespass done, and in consequence of it, pecuniary benefit springs to the offender, but which in law belongs to the party offended, he may recover it. in an action of assumpsit. In common law-language, he may waive the trespass, i. e. damages for the outrage, and go for the money actually received. No one can doubt, that if A violently took the money of B, and then A died, B may recover the money actually taken and used by A, in his lifetime; and the action would be competent against the representative of his estate ; because the money had gone into the estate;- The reason why the action of trespass does not survive the trespasser, is, because the outrage committed is personal, and not beneficial to the offender. It hurts, another, but brings no money to the trespasser; as where a man strikes you, or kills your negro. But if he takes your negro and sells or employs him, he then gets your money, which goes into his estate ; and assumpsit of course lies, to recover it, either of him or his representative. The admission, that if the trespasser should have hired out the negro and received money for his services, then you may recover such money, yields the whole principle. Money received, and money’s worth, afford the same cause of action. The amount of money received of the hirer, serves no other purpose but as a measure of the benefit which sprang to the trespasser by employing the negro ; and whether the benefit accrued from the services of the negro ,to the trespasser personally, or came to him indirectly in the sum of his wages, still, money is the measure of the loss to the owner and of the benefit to the trespasser. He has received in the one case a specific benefit, measured by the wages received in money ; in the other, he has received an equal benefit in money’s worth ; but which, the jury must assess, because the case affords not the same specific measure as the money would.
The essential principle of the action upon the implied contract with the administrator, is no more than this, that the lawful property of the plaintiff had gone to the estate of the intestate. And if the property has disappeared, you can recover, only in pecuniary measure, the amount of the use. If the intestate sold the property, the price received constitutes that measure,' If he hired it out, the wages received gives the measure. ' If he uses it, the value of the use affords the measure. But the right of action is the same in either case, and is equally supported in law.
*252 The essential points to be verified, are the loss of the plaintiff’s right and the actual gain to the estate of the intestate. The mistake arises from an erroneous-construction of the case of Ryan vs. Administrator of Marsh, 2 Nott and M’Cord, 156. The action was for the use and occupation of land by the intestate Marsh. The history of the case points to the true .Construction. The judge first ruled that the 'action was competent. It depended upon the question, whether the intestate had received pecuniary benefit from the use 1 And I here repeat, that money and money’s worth, give equally the right of action. The sole difference is, that money gives, both intrinsically and in terms, its own standard measure of value ; but neither property nor services afford the measure in terms; therefore, you must of necessity estimate and express the amount of money.
But to proceed ip Marsh’s case. Afterwards, the parties agreed that both th.e possession and the taking had been a continued tort. The judge then non-suite.d the plaintiff, and the non-suit was unanimously supported. >
But we are .told in the very case, that the action might be supported, if the tender had been converted into cash ; or if rents had been received by Marsh ; or by his bare occupation of the land; as long as it is left to implication to determine, whether the occupation was permissive or not. But this could not follow, when the entire possession was admitted to be a continued tor,t.
So in the case before us, if it appeared expressly, or by consent, that ,the taking of the negroes, and the possession afterwards, was one continued .tortious cause of action, and if Churr took the negro and kept him locked up, in order to punish him for some offence, or to spite the owner, the action would be personal, and die with the trespasser. But the moment the trespasser makes actual value out of the negro, either in cash, or that which is worth cash in market, as labor and services, such value goes into the mass of his estate; ,and the representative of the estate must refund such value to the proper owner, as much as if it had been received in dollars. Any distinction between money and the value, is merely in language, not in reason or nature. Money is the palpable exhibition of the value of property, or services, — when we express the value in money —as when we say, a horse is worth $100, we mean to express the value of the horse, by the standard symbol — money. The value is presented to the understanding by the amount in money. In old time wheat was the standard of value; and a slave, for instance, was worth 500 bushels of wheat.
Now, according to the distinction taken, if the wheat were taken by .the trespasser, his representative would be liable. But if the slave him *253 self be taken, you cannot recover for his use or value, unless the use or value has been exchanged for wheat. That is, you may recover the specific representative of the value, if the property, or use of it, has been cashed. But if not actually cashed, you cannot recover the value of either.
Thompson, for motion. Hunt, contra.
No such distinction can be supported now-a-days ; gold and silver coin represent the value of services reridered, and of property instead of wheat. There is no magic or complexity in the change from wheat to metal; each has been, in turn, the standard measure or representative of the value of property ; and both are the subjects of property.
Can it be of any consequence, whether the estate of the trespasser has been increased by the use of the property, or the value of the use received in coin — by the property itself, or the sales of the property — by the wheat, or the slave — by the money or the money’s worth 1
The only rational inquiry, is, whether, and to what extent, has the property of another gone into the intestate’s estate 1 If it has, the represen-, tative is liable, and must refund it in kind or in money.
If the trespasser commits a ..mere outrage, which cannot enrich him, although it make his neighbor poor, yet his executor or administrator is not responsible. The rule applies, “Actio personalis, moritur cum, personal
And the proper test in the application of the maxim, is, has money, or (which is one and the same,) money’s worth, gone into his estate % If it has, the representative is liable to the extent of the money, or money’s worth, actually received by his intestate, in an action upon the implied contract; which eitherthe receipt of money, or the acceptance of services, always implies.